UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

IN RE FAB UNIVERSAL CORPORATION
SHAREHOLDER DERIVATIVE LITIGATION                    No. 14 Civ 687 (RWS)
                                                     OPINION

------------------------------------------X

A P P E A R A N C E S:

          Attorneys for Plaintiffs

          KAHN SWICK & FOTI, LLC
          206 Covington Street
          Madisonville, LA 70447
          By:  Melinda A. Nicholson,

          Attorneys for Defendants

          LOEB & LOEB LLP
          345 Park Avenue
          New York, NY 10154
          By:  Eugene R. Licker, Esq.
               Jonathan N. Strauss, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11-17-15

1

**Sweet, D.J.,**

Plaintiffs Kathi W. Thorbjornsen ("Thorbjornsen") and
Randolph J. Rowekamp ("Rowenkamp") (collectively, the
"Plaintiffs") have moved pursuant to Federal Rule of Civil
Procedure 23.1 for final approval of the proposed settlement
resolving claims asserted in this shareholder derivative action
against Christopher Spencer, Zhang Hongcheng, J. Gregory Smith,
Douglas Polinsky, Denis Yevstifeyev, Gu Jianfen, James Rogers
Jr., John Busshaus, and FAB Universal Corporation ("FAB" or the
"Company"), and for an award of attorney's fees, reimbursement
of expenses, and service awards. For the reasons set forth
below, the motions are granted.

**Prior Proceedings**

Plaintiff Thorbjornson initiated this derivative action on
February 3, 2014, alleging that FAB's directors and officers
breached their fiduciary duties by deceptively and through FAB's
subsidiaries licensing thousands of kiosks in China to copy
illegally pirated copyrighted material on to consumer devices,
while holding FAB out to be a legitimate purveyor of digital
entertainment products. See Compl. ¶¶ 1-2. Furthermore,
Thorbjornson alleged that Defendants Spencer, Smith, Polinsky,

2

Yevstifeyev, and Busshaus misappropriated material non-public information of FAB by selling approximately \$5.08 million of Company stock in relation to a concealed \$16.4 million bond-offering. See Compl. ¶ 3; s¶ 3; see also Decl. or M.A. Nicholson in Supp. Mot. for Final Approval ("Nicholson Decl.") ¶¶ 5-6, 13. On February 21, 2014, Rowekamp filed a similar derivative action. The cases were consolidated on May 6, 2014.[1] Stip. Consolidating Related Actions ¶ 4.

On May 20, 2015, the parties informed the Court they had executed a memorandum of understanding setting forth terms of a settlement. Letter from E.R. Licker (May 20, 2015). Briefly summarized, the Settlement comprises a number of corporate governance reforms to be made over the next six years, including: (1) creation of an SEC Disclosure Committee; (2) strengthening of Board independence through limitations on the ability of directors and management to serve on other company boards and committees; (3) improvement to Board competence through establishment of education programs for directors; (4) changes to the Board's committee system and functionality; (5) adoption of a methodology for anonymous reporting to an Audit

---

[1] These derivative actions are also related to a securities class action against FAB pending before this Court, Simmons v. Spencer, No. 13 Civ. 8216 (RWS). The cases were accepted as related on May 8, 2014.

3

Committee and the Board; and (6) in the event the Company grows to a particular size, creation of a position for a Compliance Officer tasked with administering the Company's corporate governance and business ethics. See Pls.' Mem. of Law in Supp. Final Approval ("Pls.' MOL") at 2, 11-13.

On July 31, 2015, Plaintiffs moved for preliminary approval of the settlement, which was granted by Order dated August 11, 2015. Consistent with the Order, the Parties thereafter mailed notices of the Proposed Settlement to FAB shareholders. Nicholson Decl. ¶22. No objection was received by Counsel or the Court. See id.; see also Reply Decl. of M.A. Nicholson ("Nicholson Reply Decl.") ¶ 3. Plaintiffs subsequently moved for final approval on September 3, 2015. A settlement fairness hearing was held on October 14, 2015. No appearances were made in opposition, and the matter was deemed fully submitted.

## I. The Proposed Settlement is Approved

Federal Rule of Civil Procedure 23.1 provides, "A derivative action may be settled . . . only with the court's approval." F.R.C.P. 23.1(c). "The central question . . . is whether the compromise is fair, reasonable and adequate." Weinberger v. Kendrick, 698 F.2d 61, 73 (2d Cir. 1982). "[I]n

4

the context of a derivative action settled on behalf of the
class of all shareholders, this requires consideration, in
particular, of whether the settlement is the result of arm's-
length negotiations in which plaintiffs' counsel has effectively
represented the interest of the shareholder class, and whether
the substantive terms of the settlement are in the interests of
[the company] and its shareholders relative to the likely
rewards of litigation." In re Pfizer Inc. S'holder Derivative
Litig., 780 F. Supp. 2d 336, 340 (S.D.N.Y. 2011) (internal
quotation marks and citations omitted).

### a. The Settlement is Procedurally Fair

"A court reviewing a proposed settlement must pay close
attention to the negotiating process, to ensure that the
settlement resulted from 'arms-length negotiations and that
plaintiffs' counsel have possessed the experience and ability,
and have engaged in the discovery, necessary to effective
representation of the class's interests." In re AOL Time Warner
S'holder Derivative Litig., No. 02 CIV. 6302(SWK), 2006 WL
2572114 at *3 (S.D.N.Y. Sept. 6, 2006) (citing D'Amato v.
Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001)) (hereinafter "In
re AOL").

5

The standards of procedural fairness are met here.   The
parties are represented by experienced counsel, supporting a
conclusion that settlement negotiations were based on informed
judgments as to the merits of the claims and defenses.   See
Pls.' MOL at 16.   The Proposed Settlement was the product of
extensive formal mediation aided by a neutral JAMs mediator,
hallmarks of a non-collusive, arm's-length settlement process.
See In re AOL, 2006 WL 2572114 at *3 (citing D'Amato, 236 F.3d
at 85); see also Pls.' MOL at 15.   The Settlement was not
conditioned on the approval of Counsel's fee award request,
further evidencing arm's-length negotiations.   Pls.' MOL at 16.
For these reasons, the Proposed Settlement is procedurally fair.

### b. The Settlement is Substantively Fair

"In the context of shareholder derivative litigation,
several of the factors enunciated in *Grinnell* inform the Court's
evaluation of whether settlement is fair, reasonable, and
adequate: (1) the reasonableness of the benefits achieved by the
settlement in light of the potential recovery at trial; (2) the
likelihood of success in light of the risks posed by continued
litigation; (3) the likely duration and cost of continued
litigation; and (4) any shareholder objections to proposed
settlement."   In re AOL, 2006 WL 2572114, at *3 (citing In re

6

Metro. Life Derivative Litig., 935 F. Supp. 286, 292 (S.D.N.Y.
1996); accord City of Detroit v. Grinnell Corp., 495 F.2d 448,
463 (2d Cir. 1974)).

### i. Reasonableness of the Benefits Achieved

"[I]n any case there is a range of reasonableness with
respect to a settlement-a range which recognizes the
uncertainties of law and fact in any particular case and the
concomitant risks and costs necessarily inherent in taking any
litigation to completion." Newman v. Stein, 464 F.2d 689, 693
(2d Cir. 1972). Moreover, in derivative actions where the harm
done is to the corporation, a monetary benefit is not necessary
for settlement approval. See Mills v. Electric Auto-Lite Co.,
396 U.S. 375, 395 (1970) ("[A] corporation may receive a
'substantial benefit' from a derivative suit . . . regardless of
whether the benefit is pecuniary in nature." (collecting
citations)).

The benefits achieved here are significant corporate
governance reforms. See Pls.' MOL at 11-13. Plaintiffs allege
false and misleading statements were made on behalf of the
Company, and the reforms proposed in the Settlement strengthen
Board competence, oversight, and transparency, building in

7

multiple levels of checks on possible misconduct so similar events cannot recur. See Pls.' MOL at 11-13, 24. Such reforms that directly address the issues that gave rise to suit are exactly the type that courts deem to confer a substantial benefit on the company. See e.g., In re AOL, 2006 WL 2572114, at *4. The benefits achieved in this settlement are therefore substantial and reasonable, particularly in light of the "range of reasonableness" standard. See Newman, 464 F.2d at 693. This factor weighs in favor of approval.

## ii. Likelihood of Success in Light of the Risks Posed by Continued Litigation

"[B]ecause shareholder derivative litigation is notoriously difficult and unpredictable, settlements are favored." Republic Nat. Life Ins. Co. v. Beasley, 73 F.R.D. 658, 667 (S.D.N.Y. 1977) (citations omitted). It is the certainty of the benefits of settlement that must be weighed against the risks of litigation. In re AOL, 2006 WL 2572114, at *5. However, the Court is not permitted to "decide the merits of the case or resolve unsettled legal questions." Carson v. American Brands, Inc. 450 U.S. 79, 88 n.14 (1981).

The doctrine of demand futility, the business judgment

8

rule, and the generally uncertain prospect of establishing a breach of fiduciary duties combine to make shareholder derivative suits an infamously uphill battle for plaintiffs. See In re AOL, 2006 WL 2572114, at *5. This case has not undergone substantive motion practice, and it is therefore even less clear that Plaintiffs will be meritorious in establishing liability than in other instances where settlement is reached after extensive adversarial proceedings. Even assuming Plaintiffs can survive each of the liability hurdles, the likelihood of establishing damages is also uncertain. It is even less likely that any damages established would achieve more benefits for the Company (or even the same amount) than are assured by the governance reforms achieved by this settlement.

A number of risks are posed by continued litigation, while settlement assures broad corporate reform. Therefore, this factor weighs in favor of settlement approval.

### iii. Likely Duration and Cost of Continued Litigation

In addition to the multiple standard defenses to a shareholder derivative action described above, this case involves multiple claims against a number of defendants, and complex fact patterns primarily concerning business conducted in

9

China.   Counsel has not provided numbers or data to support the
time or cost intensiveness of this litigation, but from these
facts alone it is reasonable to conclude that prosecution would
likely necessitate a substantial amount of time and expense.
See id.

By contrast, the Settlement assures immediate corporate
reforms.   Pls.' MOL at 18.   "Termination of the litigation at
this stage of the proceedings obviates the expenditure of any
future time and expense in connection with this action, and will
allow the Company to direct its full attention to it substantive
business."   In re AOL, 2006 WL 2572114, at *5 (quotation marks
and citations omitted).   Thus, this factor weighs in favor of
settlement approval.

**iv.  Shareholder Objections to the Proposed Settlement**

"The reaction of shareholders may be gauged by reference to
the extent of objection to the settlement.   In the context of
class actions, courts in this Circuit have noted that the lack
of objections may well evidence the fairness of the Settlement."
In re AOL, 2006 WL 2572114, at *6 (collecting citations)
(quotation marks omitted).

10

No appearances were made at the fairness hearing to object to this settlement, Lead Counsel has received no objections, and no objections have been filed with the Court.  Pls.' Reply at 2. The complete lack of shareholder objection to this settlement weighs in favor of approval.

All the Grinnell factors relevant to shareholder derivate actions weigh in favor of settlement approval.  Accordingly, for the reasons set forth above, the Proposed Settlement is substantively fair.

**c. Notice**

"Notice of a proposed settlement . . . must be given to shareholders or members in the manner that the court orders." F.R.C.P. 23.1(c)."  Notice in this case was undertaken consistent with the Court's preliminary approval of the Settlement. See supra Prior Proceedings.  The Notice of Settlement was published in *Investor's Business Daily* on August 28, 2015, posted to the Company's website with the Stipulation, published via national wire in *Globe Newswire* on August 28, 2015, and posted to Lead Counsel's website.  Pls.' MOL at 2. The Notice requirement of Rule 23.1 is therefore met.

11

## II.  The Requested Attorney's Fees, Expenses, and Service Awards are Awarded as Reasonable

Lead Counsel for Plaintiffs have moved for an award of $250,000: attorney's fees in the amount of $236,167.67, reimbursement of expenses in the amount of $8,832.33, and service awards for each Lead Plaintiff in the amount of $2,500. Pls.' Mem. of Law in Supp. Mot. Award of Atty's Fees at 1 ("Pls.' Fees MOL").  The total has been negotiated and approved by FAB after and separately from the substantive terms of the Settlement.  Id. at 6.  For the reasons set forth below, each request is granted.

### a. Attorney's Fees

"It is by now . . . well established that an award of counsel fees is only justified where the derivative action results in a substantial non-monetary benefit to a corporation." Kaplan v. Rand, 192 F.3d 60, 69 (2d Cir. 1999) (citing Mills, 396 U.S. at 392).  The same principle applies to substantive benefits achieved by settlement.  Kopet v. Esquire Realty Co., 523 F.2d 1005, 1008 (2d Cir. 1975) ("federal courts may award counsel fees based on benefits resulting from litigation efforts even where adjudication on the merits is never reached, *e.g.*,

12

after a settlement."). "Given the corporate benefits described above, the Court's determination of whether plaintiffs' counsel's requested fee award is reasonable is guided by the factors set forth by the Second Circuit in Goldberger v. Integrated Res., Inc. . . . These factors are: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation ...; (4) the quality of the representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." In re Pfizer, Inc. S'holder Derivative Litig., 780 F. Supp. 2d 336, 343 (S.D.N.Y. 2011).

### i. Time and Labor Expended by Counsel

Lead Counsel has devoted 266.2 hours to this action, incurring an aggregate lodestar of $174,652.50. Pls.' Fees MOL at 3. "In shareholder litigation, courts typically apply a multiplier of 3 to 5 to compensate counsel for the risk of contingent representation." Cohn v. Nelson, 375 F. Supp. 2d 844, 862 (E.D. Mo. 2005) (collecting citations). Lead Counsel's multiplier in this action is 1.35. Pls.'s Fees MOL at 13. Although this case may not involve highly complex questions of law, the relevant facts are not simple and straightforward, and recovery was far from certain. See supra § I(B)(ii)-(iii). A lodestar

13

multiplier of 1.35 is sufficiently low that it is reasonable to compensate counsel for the time and labor expended, as well as the risk of litigating an uncertain case under a contingency fee arrangement. In re Comverse Tech., Inc. Sec. Litig., No. 06-CV-1825 (NGG), 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010) ("Where, as here, counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar.").

### ii. Magnitude and Complexities of Litigation

Counsel has provided limited information as to the unique complexities of litigating this action. See Pls.' Fees MOL at 14-15.  However, as a derivative shareholder suit, the many defenses available and opportunities to reduce or rebut any findings of liability or damages make this litigation complicated.  See supra § I(B)(ii)-(iii).  This factor militates in favor of settlement approval.

### iii. Risk of Litigation

As discussed above, a number of significant risks to recovery existed in this action.  See supra § I(B)(ii)-(iii). Nearly all these risks stem from the fact that derivative

14

actions are "notoriously difficult and unpredictable." See
Republic Nat. Life Ins. Co., 73 F.R.D. at 667 (citations
omitted). Lead Counsel took the case on contingency
nonetheless, negotiating a settlement before and independent of
any reassurances as to fee. Pls.' MOL at 16. The inherent
risks of prosecuting this case therefore weigh in favor of fee
approval.

### iv. Quality of Representation

Lead Counsel have obtained significant benefits for FAB in
obtaining extensive corporate governance reforms in settlement
that will help assure that the alleged conduct in this action
does not recur. See supra I(B)(i). The Settlement itself,
achieved through adversarial negotiation with and litigation
against highly competent and experienced defense counsel,
therefore evidences that the quality of representation is high
in this case. This factor weighs in favor of approval.

### v. Requested Fee in Relation to the Settlement

Unlike a monetary settlement, the corporate governance
reforms achieved by the Settlement cannot be easily compared
side by side to the requested fee award. However, the parties

15

have agreed to an overall amount of $250,000 to be paid for by the Company. Though this litigation may have been risky, the facts demonstrate that FAB has already paid a significant price for the alleged conduct, as reflected in the two instances in which their stock price dropped significantly. Nicholson Decl. at ¶ 7 (detailing a drop from $9.70 per share on September 25, 2013 to $5.25 per share on November 14, 2013), ¶ 8. This fact alone is relevant in projecting the value to FAB achieved by the Settlement. The monetary value of governance reforms designed to prevent such misstatements that, when revealed, damage the Company significantly, are likely far beyond $250,000. See generally Nicholson Decl. ¶ 9 (alleging "hundreds of thousands" of dollars in shareholder value eliminated). Further, given the amount necessary to defend and investigate such matters, even if FAB were always meritorious, avoidance of another similar action is worth a great deal. In the marketplace, assurance of these changes likewise has a monetary benefit for FAB. This factor therefore weighs in favor of settlement approval.

### vi. Public Policy Considerations

"[T]he purpose of the derivative action was to place in the hands of the individual shareholder a means to protect the interests of the corporation from the misfeasance and

16

malfeasance of faithless directors and managers.  Kamen v.

Kemper Fin. Servs., Inc., 500 U.S. 90, 95, 111 S. Ct. 1711,

1716, 114 L. Ed. 2d 152 (1991) (quotation marks omitted).  Such

enforcement is clearly in the interest of the public, the

markets, and the economy.  Award of attorney's fees in excess of

a 1.0 lodestar multiplier incentivizes counsel to take such

matters on contingency, further promoting compliance with

commercial law by increasing the likelihood of enforcement.

Public policy therefore militates in favor of fee approval.

Finding all Goldberger factors weigh in favor of approval

and given that no objection has been made to the award of fees,

Lead Counsel's request for fees in the amount of $236,167.67 is

reasonable.

a. **Expenses and Costs**

"It is well-settled that attorneys may be compensated for

reasonable out-of-pocket expenses incurred and customarily

charged to their clients, as long as they were incidental and

necessary to the representation of those clients.  In re Bear

Stearns Companies, Inc. Sec., Derivative, & ERISA Litig., 909 F.

Supp. 2d 259, 272 (S.D.N.Y. 2012).  Counsel request

reimbursement for litigation expenses in the amount of

17

$8,832.33.  Nicholson Decl. ¶ 43.  Counsel have submitted a declaration itemizing the incurred expenses, and all categories identified are of the type for which reimbursement is generally granted.  Indeed, nearly half of the amount requested, $4,225.00, was for the cost of mediation fees.  No objections have been made regarding the requested reimbursement.  The requested expenses are therefore reasonable.

b. **Service Awards**

"Courts in this Circuit routinely award ... costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place."  In re Bear Stearns, 909 F. Supp. 2d at 272-73.  The two lead plaintiffs have requested awards of $2,500 each for their work reviewing filings, communicating with counsel, overseeing this litigation, and discussing potential settlement.  This request is minimal, and given that no objection has been made, the amount is reasonable.

## III.   Conclusion

For the foregoing reasons, the motions for final approval of the Settlement and award of attorney's fees, expenses, and service awards are granted.

It is so ordered.

New York, NY
November / 7, 2015

ROBERT W. SWEET
U.S.D.J.

19